IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA COLLETON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UMASS MEMORIAL HEALTH CARE, INC,<br><br>Defendant. | Case No.:<br><br>[Trial Court of Massachusetts, The Superior Court, Worcester County, Docket No. 2285CV01293D]<br><br>DEFENDANT'S NOTICE OF REMOVAL UNDER 28 U.S.C. § 1442(a)(1) |

## NOTICE OF REMOVAL

To the Honorable Judges of the United States District Court for the District of Massachusetts and Plaintiff Lisa Colleton:

Over the past two decades, the federal government has engaged in an extensive effort to build a nationwide health information technology infrastructure. This case challenges the legitimacy of actions UMass Memorial Health Care, Inc. ("UMass Memorial") has taken in connection with pursuing that directive. UMass Memorial therefore removes this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

In like circumstances, as explained *infra* at pages 9 and 10, district courts have allowed removal under the federal officer removal statute. *See Doe I v. UPMC*, No. 2:20-cv-359, 2020 WL 4381675, at *6 (W.D. Pa. July 31, 2020); *Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627, at **2-3 (N.D. Ohio Oct. 30, 2020).

In support of removal, UMass Memorial provides the following "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a):

## NATURE OF THE CASE

1.  UMass Memorial is a Massachusetts nonprofit charitable corporation that is the direct or indirect corporate member of each of the entities that makes up the UMass Memorial healthcare system.

2.  On November 14, 2022, Plaintiff Lisa Colleton filed a complaint against UMass Memorial, in the Superior Court of the Commonwealth of Massachusetts for the County of Worcester, Case No. 2285CV01293D.

3.  Plaintiff served UMass Memorial with the Complaint, effective on December 8, 2022.

4.  Plaintiff's Complaint purports to challenge UMass Memorial's routine on-line practices as "a surreptitious disclosure of medical information," "an outrageous invasion of privacy," and illegal wiretapping. *See generally* Complaint; *id*. at ¶ 78.

5.  UMass Memorial (together with its affiliates) operates websites, including www.ummhealth.org (the "website" at issue), that provide information to the public about UMass Memorial and access to medical records through an Epic myChart patient portal.

6.  Plaintiff is a UMass Memorial "patient, enrollee, or subscriber" who "has used Defendant's website on numerous occasions to search for medical information, services and physicians, and to pay for medical services." Compl. ¶¶ 92, 93. UMass Memorial's website "offers a wide range of healthcare services." *Id*. ¶ 2.

7.  Plaintiff alleges that the Facebook[1] or Meta Pixel, allegedly used on the UMass Memorial website, "tracks the actions of Website users, such as the information they input on the Website, the pages they view, the physicians they view, the physicians they contact, the

---

[1] Facebook rebranded itself as Meta in 2021.

2

appointments they schedule, and the locations of those physicians/appointments." Compl. ¶ 25. Plaintiff further alleges that "[w]hen someone uses the Website, the user's FID (Facebook ID) and these communications about their medical information are simultaneously sent to Facebook via Facebook Pixel." *Id*. ¶ 26.

8. Plaintiff also alleges that Google Analytics, allegedly used on the UMass Memorial website, "collect[s] the IP addresses of Website users and track their activity on the Website, including communications about private medical information." *Id*. ¶¶ 43, 44. Plaintiff contends that UMass Memorial "discloses this information to Google via Google Analytics without Website users' knowledge or consent." *Id*. ¶ 45.

9. Plaintiff does not assert that UMass Memorial discloses names, social security numbers, diagnoses, birthdates, or comparable information to the third parties.

## BASIS FOR REMOVAL

10. UMass Memorial removes this case pursuant to the federal officer removal statute. 28 U.S.C. § 1442(a). That statute permits removal when the defendant is "the United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency therefore, in an office or individual capacity, for or relating to any act under color of such office …" *Id*. § 1442(a)(1).

11. The United States Supreme Court has directed that the federal officer removal statute is to be broadly construed, and defendants can remove under this statute when they are acting under color of federal office. *Colorado v. Symes*, 286 U.S. 510, 517 (1932); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981). To do so, a defendant must show that (a) it is a "person" within the meaning of the statute, "acting under a federal officer's authority"; (b) that the charged conduct was carried out "for or relating to" the asserted official authority; and (c) the defendant

3

can assert a "colorable federal defense." *Moore v. Elec. Boat Corp.,* 25 F.4th 30, 34 (1st Cir. 2022); *see also O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 53 (D. Mass. 2008) (proper removal under federal officer removal statute).[2]

12.  Since at least 2004, the federal government – through executive order, legislation, and regulatory and sub-regulatory action – has directed and overseen a public-private initiative to develop a nationwide infrastructure for health information technology. It has incentivized and directed providers who participate in the Medicare and Medicaid program (like UMass Memorial's clinical affiliates) to offer patients online access to their records, and to optimize patient engagement with their medical information. The federal government has also modeled the behavior it wants to see; it has created a portal for Medicare beneficiaries and worked with the same third-party services, with the same "source code," at issue in this case.

13.  UMass Memorial has dutifully assisted and followed the federal government's direction in this effort. In so doing, it has acted within the penumbra of federal action and office. Given this, and the Supreme Court's directive that the federal officer removal statute must be broadly construed, and because this suit challenges this federally-directed conduct, the requirements of the federal removal statute are satisfied.

### *The Meaningful Use Program*

14.  In 2004, President Bush issued an Executive Order that established a National Health Information Technology Coordinator (ONC). *See* Exec. Order 13335 (Apr. 27, 2004). The purpose of the Order was to spark a "nationwide implementation of interoperable health information technology in both the public and private health care sectors." *Id*.

---

[2] In 2011, Congress amended § 1442(a)(1) to reach removal based on a suit "for or relating to any act under color of [federal] office." *See* Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat. 545 (adding "or relating to" language to the provision). "Circuits have consistently given this requirement a broad reading and held that no causal link is required." *Moore*, 25 F.4th at 35.

15. Five years later, Congress codified the office in the Health Information Technology for Economic and Clinical Health Act of 2009. 123 Stat. 115, 247 (2009). At that time, Congress allocated billions of dollars to CMS to "invest in the infrastructure necessary to allow for and promote the electronic exchange and use of health information for each individual in the United States consistent with the goals outlined in the strategic plan developed by the [ONC]." *Id*.

16. Consistent with its mandate, the ONC has published guidance for private providers to follow, including through five-year strategic plans. In the 2015-2020 plan, it dictated that "federal agencies" were to "<u>collaborate with</u> . . . private stakeholders to . . . build a culture of electronic health information access and use." ONC, *Federal Health Information Technology Strategic Plan 2015-2020*, available at https://dashboard.healthit.gov/strategic-plan/federal-health-it- strategic-plan-2015-2020.php) (emphasis added). And, in the 2020-2025 plan, it noted that this has already happened, saying: "The federal government and private sector have worked together to help digitize health information and healthcare." ONC, *Federal Health Information Technology Strategic Plan 2020-2025* available at https://www.healthit.gov/sites/default/files/page/2020-01/2020-2025FederalHealthIT%20StrategicPlan_0.pdf ("2020-2025 Strategic Plan").

17. One critical aspect of this strategy is the "Meaningful Use" program of CMS. 42 C.F.R. § 495.2-495.370. As the name implies, the program aims to increase patient's "meaningful use" and engagement with electronic health records through the creation of patient portals.

18. Under this program, providers must meet certain criteria in order to receive full Medicare reimbursement, one of which is having an interoperable patient portal. Regulations provided for incentive payments of up to two percent for providers who reached certain level engagement with electronic health record use through the patient portal.

19. To achieve those specifications, CMS recommends that providers create patient "portals" that allow users to communicate directly with their providers and immediately access (or transfer) their medical records.

20. The ONC has specified how providers can optimize such portals, explaining that they "must be engaging and user-friendly." ONC has also specified "how a patient portal helps achieve meaningful use requirements," and how a provider can "actively promote and facilitate portal use." ONC, *How to Optimize Patient Portals for Patient Engagement and Meet Meaningful Use Requirements* (2013) available at https://www.healthit.gov/sites/default/files/nlc_how_to_optimizepatientportals_for_patienten gagement.pdf.

21. In addition to this guidance, CMS has created its own portal, offering a model for private providers to follow. To optimize individual engagement with the portal, CMS relies on third-party marketers, like Google and Facebook. By working with over two dozen third-party servicers, CMS is able to provide users with the information most relevant to them. *See generally* Medicare.gov, Privacy Policy (explaining that website "users' activity on third-party websites that Medicare.gov links to (like Facebook or Twitter) is governed by the security and privacy policies of those websites," and that any information users "provide to register on Facebook is voluntarily contributed and isn't maintained by" CMS).

### *UMass Memorial Is A "Person" Within § 1442(a)(1)*

22. By the plain terms of the statute, removal is permitted by "any person acting under that officer." 42 U.S.C. § 1442(a)(1).

23. While the statute is silent as to the definition of a "person", organizations, corporate defendants, and government entities have routinely removed under this provision and been deemed a "person" under the statute. *See, e.g., Camacho v. Autoridad de Telefonos de Puerto Rico*, 868

F.2d 482, 486 (1st Cir. 1989) (quasi-public telephone company); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 58 (D. Mass. 2008) (corporation); *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 32 (1st Cir. 2022) (same); *Genereux v. American Beryllia Corp.*, 577 F.3d 350 (1st Cir. 2009) (same); *Teague v. Grand River Dam Auth.*, 279 F. Supp. 703, 704–05 (N.D. Okla. 1968) (public Grand River Dam Authority).

24. UMass Memorial is a non-profit charitable corporation organized in Massachusetts, Compl. ¶ 7, and since the federal officer statute is to be broadly construed, UMass Memorial qualifies as a person under that statute.[3]

### UMass Memorial is Effectively Acting Under a Federal Officer

25. This element focuses on the relationship between the federal government and the private entity. It asks whether the entity is engaged in "an effort to assist, or to help carry out, the duties or tasks of the federal superior," and whether the relationship between the government and private entity involves "subjection, guidance, or control." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151-152, 127 S.Ct. 2301, 168 L.Ed.2d 42 (2007). To that end, the federal officer removal statute should be "liberally construed" to fulfill its purpose of allowing federal officials and agents who are being prosecuted in state court for acts taken in their federal authority to remove the case to federal court. *Id.* at 147–49.

26. Here these fundamental requirements are met. The federal government is incentivizing, regulating, monitoring, and supervising UMass Memorial's actions in the Meaningful Use program in order to meet the federal government's national priority of interoperable health information technology.

---

[3] Although in other contexts, UMass Memorial may not meet the statutory definition of a "person," here, the federal officer statute's broad construction weighs in favor of that interpretation.

27. First, UMass Memorial (along with many other entities) is helping the government produce the nationwide, interoperable information technology infrastructure for health information. The federal government itself has repeatedly acknowledged the private sector's essential role in the project, most recently stating that "the federal government and private sector have worked together to help digitize health information and healthcare." *See* 2020-2025 Strategic Plan.

28. Second, in the absence of UMass Memorial's actions (and the work of comparable medical providers throughout the country), the federal government would be left alone to complete its mission. As its efforts to digitize information and increase patient engagement with Medicare beneficiaries underscores, it would likely attempt to do exactly that.

29. Third, the government has specified how to best enhance patient engagement, including through patient portals. It has clarified how to generally design the portals, and has told entities how best to market their on-line resources. Furthermore, through its own engagement with third-party services, it has modeled the behavior that private entities are to follow.

30. Finally, the government has created an office dedicated to this endeavor and has closely monitored the work of private entities (like UMass Memorial). It has also supervised the general development of this information technology infrastructure. And, because Meaningful Use program's incentives are available only to entities participating in the Medicare and Medicaid programs, CMS substantially incentivizes UMass Memorial and comparable organizations to not only maintain public websites and/or patient portals, but also to achieve meaningful use of them.

31. In like circumstances, courts have held that defendant medical providers were "acting under" a federal officer while performing similar alleged conduct. *UPMC*, 2020 WL 4381675, at *6 (holding that the University of Pittsburgh Medical Center's participation in the

Meaningful Use Program was sufficient to satisfy the "acting under" requirement necessary for the federal officer removal statute); *Doe v. ProMedica Health Sys., Inc.*, No. 3:20 CV 1581, 2020 WL 7705627, at **2-3 (N.D. Ohio Oct. 30, 2020) (same; "[b]ecause [ProMedica Health System's] participation assisted the federal government in achieving [the creation of a unified system of patient electronic health records], Defendant has satisfied the 'acting under' prong").

32. In *UPMC*, as in this case, plaintiffs sought redress under state law for UPMC's alleged disclosure of plaintiffs' personally identifiable information to third parties for internet marketing purposes without their knowledge or authorization. *UPMC*, 2020 WL 4381675, at *1. The UPMC court was focused on both the portal and the public website as being vehicles of furthering the government's goal of increasing patient engagement with electronic health records. *Id.* at *6 ("UPMC, as a participant in the Meaningful Use Program, receives incentive payments from DHHS for its development and use of the UPMC website and the MyUPMC portal in accordance with the program's criteria."). And here, as in UPMC, "[t]here is plainly a connection or association between [the medical provider's alleged] website management and marketing strategies and the Meaningful Use program, particularly the incentives that are tied to patient participation and usability. Plaintiff's claims are therefore 'for or relating to' an act under color of federal office." *Id*.

### Plaintiff's Claims Relate to the Actions Under Color of Federal Office

33. Under Section 1442(a)(1), the conduct at issue in the case must also "have been undertaken for or relating to" the federal office. "Circuits have consistently given this requirement a broad reading . . ." *Moore*, 25 F.4th at 35. In fact, any single claim is independently sufficient to satisfy the "for or relating to" requirement under § 1442(a)(1). *Id.* (citing *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020)).

34. Plaintiff's Complaint directly challenges UMass Memorial's website analytics practices, which help drive patients to UMass Memorial websites.

35. Plaintiff's Complaint also generally targets UMass Memorial's alleged tracking of online behaviors through source code and cookies, along with the use of marketing companies in conjunction with its public medical websites. This – as manifested by the government's own use of these third parties – is precisely what the Meaningful Use program envisions.

36. The entire point of using the third-party services is to direct traffic to, and increase engagement with, UMass Memorial websites. *See, e.g.*, Compl. ¶¶ 24-25, 43-44. Indeed, Plaintiff acknowledges that the Meta Pixel and Google Analytics are "analytics tool[s]" that help to "track" users and types of actions they take. *Id.*

### *UMass Memorial Raises Colorable Federal Defenses to Plaintiff's Claims*

37. The final requirement for removal under 42 U.S.C. § 1442(a)(1) is a low bar, merely requiring that the defendant's assertion is both "defensive" and "based in federal law." *Mesa v. Cal.,* 489 U.S. 121, 129-30 (1989); *Moore*, 25 F.4th at 37 (a "colorable federal defense" need not be "clearly sustainable," but rather, a federal defense is colorable unless it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous") (citations omitted); *accord. Bahrs v. Hughes Aircraft Co.*, 795 F. Supp. 965, 969 (D. Ariz. 1992) ("The question is not whether a defendant's claimed defense is meritorious, but only whether a colorable claim to such a defense has been made.")

38. There is at least one colorable federal defense to the claims at issue here that satisfy this requirement.

39. In response to Plaintiff's repeated claims that "private medical information" and "medical communications" were disclosed, UMass Memorial will argue that the information

10

purportedly disclosed (*i.e.*, IP addresses and other web metadata) is outside of the purview of protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Another district court has already made this holding in an analogous case against numerous health care providers challenging alleged disclosures on the Internet through routine website traffic. *See Smith v. Facebook*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017). This defense therefore turns on an interpretation of federal law and on its own is sufficient to satisfy this element's low bar.

40. Because each of the requirements of the removal statute are satisfied, removal to this Court is proper.

## PROCEDURAL REQUIREMENTS FOR REMOVAL

41. UMass Memorial likewise satisfies all of the procedural requirements under 28 U.S.C. § 1446.

42. UMass Memorial is filing this Notice of Removal within twenty (20) days of its receipt of the Complaint by "service," 28 U.S.C. § 1446; Mass. R. Civ. P. 12(a)(1).

43. UMass Memorial files this Notice in the United States District Court of the District of Massachusetts, because the state court in which the action is pending, the Superior Court of the Commonwealth of Massachusetts for the County of Worcester, is within this federal judicial district. This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

44. UMass Memorial has attached a copy of "all process, pleadings, orders, and other documents" currently on file in the state court, including Plaintiff's Complaint.

45. Upon filing this notice, UMass Memorial will promptly "give written notice thereof to all adverse parties," and will "file a copy of the notice with the clerk" of the state court.

## **CONCLUSION**

As set forth above, Plaintiff's Complaint directly challenges practices and procedures UMass Memorial has taken acting under color of federal law in implementing federal policy to nationalize the health information technology infrastructure. Plaintiff's Complaint is therefore appropriately removable to this Court pursuant to 28 U.S.C. § 1442(a)(1).

**WHEREFORE**, UMass Memorial respectfully removes this action from the Superior Court of the Commonwealth of Massachusetts for the County of Worcester and requests that this Court issue such orders and process as may be necessary to preserve its jurisdiction over this matter.

[SIGNATURE BLOCK FOLLOWS ON THE NEXT PAGE]

Dated: December 28, 2022                    Respectfully submitted,

/s/ James H. Rollinson
James H. Rollinson, Esq. (BBO #649407)
BAKER & HOSTETLER LLP
127 Public Street
Suite 2000
Cleveland, OH 44116
jrollinson@bakerlaw.com
T: (216) 621-0200
F: (216) 626-0740

Paul G. Karlsgodt (pro hac vice to be filed)
BAKER & HOSTETLER LLP
1801 California Street
Suite 4400
Denver, CO 80202-2662
pkarlsgodt@bakerlaw.com
T: (303) 764-4013
F: (303) 861-7805

Elizabeth A. Scully (pro hac vice to be filed)
BAKER & HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
escully@bakerlaw.com
T: (202) 861-1500
F: (202) 861-1783

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that, on December 28, 2022 copies of the foregoing notice of removal were served on the following by regular mail and email at the addresses listed below.

William P. Doyle, III
Colonna & Doyle and Simeola
26 Main Street
3rd Floor
Lynnfield, MA 01940
bill@colonna-doyle.com

Nicholas A. Coulson
Lance Spitzig
Liddle Sheets Coulson P.C.
975 E. Jefferson Avenue
Detroit, MI 48207
NCoulson@LSCCounsel.com
LSpitzig@LSCCounsel.com

*Attorneys for Plaintiff*

/s/ James H. Rollinson
*One of the attorneys for defendant*